SPAK *v.* THE STATE OF OHIO.

(Decided October 15, 1934.)

*Mr. B. D. Zieve,* for plaintiff in error.
*Mr. Ezra Z. Shapiro, Mr. Michael A. Picciano* and *Mr. Stephen Gobozy,* for defendant in error.

LIEGHLEY, P. J.   Peter Spak was charged, arrested, tried and convicted in the Municipal Court of Cleveland of the crime of manufacturing intoxicating liquor, upon an affidavit in the words and figures following:

"That on or about the 9th day of March, A. D., 1934, at said City and County, one Peter Spak did unlawfully manufacture intoxicating liquor, to-wit: liquor having an alcoholic content in excess of 3.2 by weight and fit for beverage purposes; he the said Peter Spak not being the holder of a permit (Class A) issued by the Department of Liquor Control and in force at the time," etc.

Error is prosecuted to this court to reverse said judgment.

A search warrant was issued and search of the home of defendant made. A motion to suppress the evidence thus obtained was made at the trial and overruled. One assignment of error is based on this ruling.

The affidavit for search warrant was dated the 10th day of March, 1934.   It was stipulated by counsel that said search warrant was issued on the 9th, executed before the judge on the 9th, and the arrest made on the

9th of March, 1934. The motion to suppress was based upon this inconsistency in dates. Otherwise, the search warrant, the approval of the court and the search itself were not seriously claimed to be unlawful or irregular.

Inasmuch as provisions of the statutes in respect to search warrants were fulfilled and complied with, we are disposed to regard this inconsistency in dates as a clerical mistake, and inadvertently made without prejudice to the rights of the defendant. In support of our conclusion the following case was cited by counsel: *United States* v. *Hertel, Athletic & Social Club,* 25 F. (2d), 872.

The affidavit contained in the record and the one above quoted had the words "for sale" after the word "manufacture." It was conceded before us that these words were added by someone after the affidavit was executed, and these two words seem to be in a different handwriting. It was agreed at the trial below with the consent of the trial court that the affidavit should be considered without these two words as a part thereof, and the trial proceeded upon the assumption that these two words were not contained in the affidavit. The state did not ask leave to amend the affidavit to read "manufacture for sale."

The defendant was tried and convicted upon the charge that he manufactured intoxicating liquor without a Class A permit contrary to law in his home and not on the charge of manufacturing for sale.

The second assignment of error upon which the defendant relies for a reversal is the claim that the affidavit charged no crime. It is asserted that the Liquor Control Act does not make the manufacture of liquor by a citizen in his home for his own use without a permit a crime in Ohio. The defendant was convicted upon the theory that it does, and the state contends that the charge and conviction is legal and authorized by law. Counsel cite no reported decision for guid-

ance in the determination of this question. It is said that the question has never been decided under the Liquor Control Act of Ohio.

In attempting to reach a conclusion it will not do to indulge in any violent presumptions in favor of the validity of the Act. The restraint upon the manufacture and consumption of alcoholic liquor is justified as a proper exercise of the police power. Such restraint should be effected by an enactment in direct and unequivocal language, or in language which conveys a clear exclusive inference of such intention. The liberties which the citizens have cannot be taken away for the above reason except by an enactment in which the intent so to do positively appears.

A decision of this question must necessarily be reached from an examination of the provisions and language of this Act. Whether or not the Legislature intended to prohibit the manufacture of liquor by a citizen in his own home for his own use, must be gathered from the language used in the Act, if such language discloses a clear intention so to do. Or, the intention to inhibit such manufacture may be the only reasonable inference deducible from the language used. So that it is necessary to quote and refer to such sections of the Act as relate to the manufacture of intoxicating liquor.

Section 6064-14, General Code, and Section 6064-54, General Code, were cited by the state as authority for its claim. Sub-section 14 reads as follows:

"No person shall directly or indirectly, himself or by his clerk, agent, or employe, manufacture, manufacture for sale, keep or possess for sale, furnish or sell any beer or intoxicating liquor in this state, or sell at retail any alcohol in this state, or transport or import any beer or intoxicating liquor or alcohol in or into this state for delivery or use herein, unless such person shall have fully complied with the provisions of this act and shall be the holder of a permit issued

by the department of liquor control and in force at the time.''

It is noted that the word ''manufacture'' is separated by a comma from the words ''manufacture for sale'', etc. It would seem therefrom that it was intended to prohibit the manufacture under any and all conditions and circumstances. However, this language should be examined with reference to the other sections of the Act to ascertain whether or not any provision or machinery is set up to control or supervise such manufacture under such circumstances and to ascertain whether or not a permit is provided for, and whether or not the act of such manufacture has been constituted a crime in order to deter and control.

Sub-section 15 defines the classes of permits that may be issued.

Permit A-1 covers the manufacture of beer and other liquor for sale.

Permit A-2 is a permit to a manufacturer to manufacture wine for sale.

Permit A-3 is a permit to a manufacturer to manufacture spirituous liquor and sell such product to the Department only, etc., and among other things to export spirituous liquor in bulk for sale outside this state. This permit does not seem to cover or contemplate the sale of liquor by its manufacturer to anyone in the state other than the Department.

Permit D-3 authorizes the owner or operator of a hotel or restaurant, etc., to sell spirituous liquor at retail, etc.

Permit D-4 permits a club which has been in existence for a period of three years or more to sell intoxicating liquor to its members only.

Permit D-5 allows the owner or operator of a night club to sell intoxicating liquor at retail on the premises where sold and at tables where meals are served.

Sections 45 to 50 inclusive designate certain acts as violative of the Liquor Control Act and fix the pen-

alty. These sections clearly relate to a dealer who fails to regard the stamp, invoice and inspection provisions as well as the sale of wines without stamps or the forging or counterfeiting of stamps, etc.

The first paragraph of Section 54 provides as follows:

"Whoever, not being the holder of a class A permit issued by the department of liquor control, in force at the time, and authorizing the manufacture thereof, or an agent or employee of the department of liquor control authorized by law and by said department to manufacture such beer or intoxicating liquor, either directly or indirectly, himself or by his clerk, agent, or employee, manufactures any beer or intoxicating liquor for sale;  *  *  *."

The balance of the section defines what acts are punishable, which are summarized as follows:

(a) Whoever, not being the holder of a class B, class C, class D, class E, class F, or class G permit issued by the department of liquor control either directly or indirectly sells, keeps or has in his possession for sale any intoxicating liquor or sells any alcohol at retail, shall be guilty of a misdemeanor, etc.

(b) Whoever either directly or indirectly sells, keeps or has in his possession for sale any intoxicating liquor, not purchased from the Department of Liquor Control, or from the holder of a permit, shall be deemed guilty of a misdemeanor, etc.

It will be observed that Section 14 alone seems to use the word "manufacture", as a distinct class and as distinguished from a manufacture for sale. A close scrutiny of the entire Liquor Control Act fails to show otherwise any express or implied intention to forbid the manufacture of intoxicating liquors by a citizen in his home for his own use. The first paragraph of Sub-section 54 ends and seems to relate only to the manufacturing of intoxicating liquor for sale.

Throughout all the sections above quoted and referred to, and throughout all the sections of the act in which the manufacture of intoxicating liquors is comprehended, there is reference only to manufacture for sale.

No permit for the manufacture of liquor in the home for consumption there, and not for sale, is provided for or authorized. No section of the act fixes a penalty for one who manufactures for his own use.

Although Section 14 seems to use the word "manufacture" as representative of a class distinguished from manufacture for sale, and all those provisions of Section 15 following cover the different kinds of permits that the Department of Liquor Control may issue, no permit is provided for this sort of manufacture. Permits A-1, A-2 and A-3 are permits for the manufacture of either beer, wine and spirituous liquors of different styles and alcoholic content, and all three permits are permits for their sale.

It should be observed that the first paragraph of Section 54 covers Class A permits. The concluding words constitute a limitation to "manufacture for sale" in respect to each Class A permit.

Our examination of all the sections of the Act leads us to the positive conclusion that the Act does not forbid a citizen of Ohio from manufacturing intoxicating liquors for his own consumption. Whether or not the Legislature intended to make illegal such manufacture cannot be gathered from the language and provisions of the Act. It may be said that the failure to provide for a permit in default of which a violation ensues for which a penalty is fixed discloses an intention not to restrain such manufacture.

So that, in a case in which it is found that the manufacture of intoxicating liquor is conducted by a person in his own private residence, whether or not such liquor is manufactured for home consumption or for

sale becomes a question of fact to be determined from all the surrounding circumstances of each particular case. The intention of such manufacture among other things should be determined from the size and character of the apparatus used, the quantity of liquor manufactured, what the maker had to say about it, his conduct in respect thereto both before and after the point of time to which the inquiry is directed, what others saw the maker do and heard him say, whether there was a sale, and so forth.

Holding these views we conclude that the affidavit does not charge a crime under the laws of Ohio. Therefore, the judgment is reversed as contrary to law, and the defendant is discharged.

*Judgment reversed.*

LEVINE and McGILL, JJ., concur in judgment.