The STATE of Ohio, Appellee,

v.

JACKSON, Appellant.

[Cite as *State v. Jackson* (1993), 86 Ohio App.3d 29.]

Court of Appeals of Ohio,
Ross County.

No. 1855.

Decided Jan. 28, 1993.

30

*Richard G. Ward,* Ross County Prosecuting Attorney, and *William H. Allyn, Jr.,* Assistant Prosecuting Attorney, for appellee.

*James E. Barrington,* Assistant Ross County Public Defender, for appellant.

HARSHA, Judge.

This is an appeal from a judgment of conviction and sentence entered upon a jury verdict by the Ross County Court of Common Pleas finding James Paul Jackson, defendant-appellant, guilty of trafficking in marijuana in violation of R.C. 2925.03, a felony of the fourth degree.

After receiving a tip that Jackson was growing marijuana, the police obtained and executed a search warrant. During the search, they found forty-two pots containing one hundred and eleven small marijuana plants. Due to their size, a relatively small amount of marijuana was seized. Jackson said that he was growing the marijuana for personal use. He was found guilty of violating R.C. 2925.03 and was sentenced to a definite term of one year in prison.

"FIRST ASSIGNMENT OF ERROR

"The trial Court erred to the manifest prejudice of the Defendant by forcing him to exercise 5th amendment rights in front of the jury on the collateral, irrelevant issue, which the Court predicted would be a 'fishing expedition', of *who* it was that sold Defendant his marijuana before he chose to start growing his own." (Emphasis *sic.*)

Jackson argues that the prosecutor should not have been permitted to ask questions regarding the original source of the marijuana seeds. He further asserts that these questions forced him to take the Fifth Amendment resulting in undue prejudice.

The right against self-incrimination applies differently depending upon whether it is the witness or the defendant who invokes the Fifth Amendment. LaFave & Israel, Criminal Procedure (1985) 883–884, Section 23.4. Once the defendant has elected to waive the privilege, he may be questioned regarding all matters that were covered on direct and may be subject to searching examination for

impeachment purposes. *Id.* To hold that he may freely state his version, safe from the prying inquiry of the prosecutor, would be an invitation to mutilate the truth. *Id.* The accused may be cross-examined as to the facts in issue, including his connection with other similar transactions. 25 Ohio Jurisprudence 3d (1981), Criminal Law, Section 321. Although the defendant has taken the stand, he has not entirely waived his Fifth Amendment rights. *Id.* However, the mere questioning which elicits the assertion of Fifth Amendment rights is not error. Error occurs when the questioning is persistent and the answers are preordained. *Columbus v. Cooper* (1990), 49 Ohio St.3d 42, 550 N.E.2d 937.

Jackson testified that his seeds were left over from marijuana he had purchased in the past, rather than hybrid seeds specifically selected for potency. He testified that he did not use "grow lights" or special soil. When asked regarding the source of his marijuana, he took the Fifth Amendment. The state's questions were properly within the scope of cross. While the transcript shows that the state was aware Jackson would invoke the Fifth Amendment, it also shows that the questioning was not repetitious. See, *Cooper, supra*, citing *State v. Dinsio* (1964), 176 Ohio St. 460, 27 O.O.2d 430, 200 N.E.2d 467. Jackson's first assignment of error is not well taken and is overruled.

"SECOND ASSIGNMENT OF ERROR

"The trial Court erred to the manifest prejudice of the Defendant by allowing the prosecutor, over objection, to misstate the law of affirmative defense of 'indicating' (the word used in R.C. 2925.03[F] ) that cultivation of marijuana for personal use, could be wiped out if the jury didn't totally believe the Defendant's testimony."

██ Jackson asserts that the trial court erred in overruling his objection to the prosecutor's statements in final closing argument which misstated the burden of proof for Jackson's affirmative defense of personal use. The assistant prosecuting attorney made the following statements during the state's final closing argument, which were objected to by Jackson's counsel:

"Let's look at the defendant for a second. If you don't believe the defendant, then his affirmative defense is out the window. There's no other foundation for this affirmative defense. If you don't believe the defendant or if you're not sure if you believe him, one way or another, the affirmative defense goes."

██ We do not interpret the foregoing argument to constitute a misstatement of the burden of proof for Jackson's affirmative defense. Instead, it was fair comment attacking the credibility of Jackson's testimony. The prosecution is entitled to a certain degree of latitude in summation. *State v. Hill* (1992), 64 Ohio St.3d 313, 330, 595 N.E.2d 884, 898. The weight to be given the evidence and the credibility of the witness are primarily for the trier of the facts. *State v.*

*Richey* (1992), 64 Ohio St.3d 353, 363, 595 N.E.2d 915, 924, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The trier of fact is free to believe all, part or none of the testimony of each witness. *State v. Harriston* (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144, 1147. Furthermore, a review of the jury instructions shows that the trial court correctly stated the law and the requirements regarding the evidentiary burdens related to Jackson's personal use defense. Jackson's second assignment of error is overruled.

"THIRD ASSIGNMENT OF ERROR

"The trial Court erred to the manifest prejudice of the Defendant by the plain error of allowing the prosecutor to instruct the jury that 'personal use' was limited to the sole personal use of the named Defendant and not personal use generally, which the statute leaves open."

Jackson asserts that the trial court erred by the "plain error" of allowing the prosecutor to instruct the jury that "personal use" was limited to sole personal use of the named defendant and not personal use generally. During Jackson's counsel's closing argument, he stated:

"You notice this charge does not say for James Paul Jackson's personal use. It says personal use. Because I think they tried to make something out of the fact that James Paul Jackson's girlfriend of some years, Dorothy, who he considered maybe a common law wife, maybe she might use some of it somebody [*sic*]. Or maybe if she's out and she needs some, he might not object if she takes some. The operative word there, and you're going to see it in black and white, is personal use. It doesn't say his exclusive personal use. If he grows it, nobody can use it but him. I think you can apply your own reasons, your own common sense * * *."

In response to the foregoing argument, the assistant prosecuting attorney noted in his final closing argument:

"He has taken the idea of personal use, you know what came to mind when he was telling me about what I called the expanded definition of personal use, which he didn't like when I used that comment with his client, but the thing that came to mind when I was hearing him tell us how personal use could also include giving it to your common law wife, and probably giving it to your friends, that it was still a personal use because if you all are getting high together then you're getting the use out of it or I guess that's the argument. * * * Personal use can take in the world. But that's not what personal use, common sense is what you're to apply. The Judge is going to tell you. Your common sense tells you what personal use is. It's when you smoke it yourself."

Jackson interposed no objection to the preceding argument by the assistant prosecuting attorney. Where defense counsel fails to object to the prosecutor's remarks during trial, unless the remarks constitute plain error, a reviewing court need not consider whether these remarks prejudiced the defendant. *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916; see, also, *State v. Lott* (1990), 51 Ohio St.3d 160, 167, 555 N.E.2d 293, 301. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B). Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. *State v. Watson* (1991), 61 Ohio St.3d 1, 6, 572 N.E.2d 97, 103; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899; see, also, *State v. Coulter* (1992), 75 Ohio App.3d 219, 231–232, 598 N.E.2d 1324, 1332– 1333 (applying this standard of review where prosecutorial misconduct was alleged but no objection was interposed below).

Jackson contends that the prosecutor's definition of "personal use" was erroneous. R.C. 2925.03(F) provides:

"It shall be an affirmative defense, as provided in section 2901.05 of the Revised Code, to a charge under this section for possessing a bulk amount of a controlled substance or for cultivating marihuana that the substance which give rise to the charge is in such amount, in such form, or is prepared, compounded, or mixed with substances which are not controlled substances in such a manner, or is possessed or *cultivated in any other circumstances whatsoever as to indicate that the substance was solely for personal use.*" (Emphasis added.)

The term "personal use" is not defined by statute. In interpreting a statute, words must be taken in their usual, normal or customary meaning. *State v. S.R.* (1992), 63 Ohio St.3d 590, 595, 589 N.E.2d 1319, 1323; see, also, *State v. Deckard* (Feb. 6, 1992), Seneca App. No. 13–91–11, unreported, 1992 WL 19350 (holding that "personal use" is not defined in the statute and must be discerned in the collective common sense and ordinary usage of the jury). In construing a statute, it is the duty of the court to give effect to the words used in a statute, not to insert words not used. *Id.* "Personal" is defined in ordinary usage as being "of or peculiar to a certain person; private; individual." Webster's New World Dictionary (3 Ed. 1988) 1008. Under the foregoing definition, "solely for personal use" would not include cultivating marijuana for the purpose of distributing it to other individuals, even if they were noncommercial transactions. Although appellant contends that the statute should be liberally construed to encompass all noncommercial transactions, he cites no authority for this novel proposition, and this court has previously held that liberal construction should not result in the exercise of the legislative power of amendment under the guise of statutory interpretation. *State v. Moore* (Jan. 20, 1992), Scioto App. No. 91CA1966,

unreported, 1992 WL 10117; *Nelson v. Ohio Bur. of Emp. Serv.* (Aug. 19, 1987), Athens App. No. 1327, unreported, 1987 WL 15907.

The apparent legislative justification for the "personal use" defense is that those charged with possessing modest amounts of controlled substances or cultivating marijuana may have intended to merely consume the drug rather than distribute it. *State v. Allen* (Jan. 23, 1992), Montgomery App. No. 12675, unreported, 1992 WL 15158. Gifts of drugs are included in the statutory definition of "sales" in trafficking offenses. See R.C. 3719.01(EE) and *State v. Brownlow* (1991), 75 Ohio App.3d 88, 598 N.E.2d 888.[1] Based on the foregoing it is manifest that the affirmative defense of personal use was not intended to apply to any distribution of marijuana, whether it be by commercial (sale) or non-commercial (gift) transaction. Consequently, we can discern no error, plain or otherwise, in the prosecutor's comments on the personal use defense. Moreover, assuming *arguendo* that Jackson's interpretation of the defense is correct, the jury could still have discredited his testimony, see *Harriston, supra,* particularly in light of the fact that he possessed one hundred and eleven plants, *i.e.,* the outcome of the trial would not clearly have been otherwise. *Watson, supra; Moreland, supra.* Jackson's third assignment of error is overruled.

"FOURTH ASSIGNMENT OF ERROR

"The trial Court erred to the manifest prejudice of the Defendant by entering judgment of conviction and sentence against the Defendant even though the unrefuted evidence established the affirmative defense of personal use contained in R.C. 2925.03(F)."

In essence, Jackson argues that, since the state did not present separate evidence to rebut his defense of personal use, he should have been acquitted. However, this ignores the holding that the trier of fact is free to believe all, part or none of the testimony of each witness. *Harriston, supra,* 63 Ohio App.3d at 63, 577 N.E.2d at 1147.

Furthermore, once a party raises an affirmative defense, it is his burden to go forward with it. R.C. 2901.05. See, also, *State v. Martin* (1986), 21 Ohio St.3d 91, 93, 21 OBR 386, 388, 488 N.E.2d 166, 167. The fact that the opposition does or does not introduce evidence to overcome the raising of the defense does not fulfill the defendant's burden. Evidence includes, *inter alia,* testimony, both on cross and on direct. In *State v. Barr* (Sept. 24, 1990), Preble App. No. CA90–02–004, unreported, 1990 WL 138353, Barr introduced a similar defense to a charge

---

1. The dissent's contention that the legislature intended to exempt from criminal sanctions those who give away drugs rather than sell them is incorrect. One need only look at R.C. 3719.01(EE) to see that it expressly includes any "exchange, transfer or gift" within the definition of "sale."

of trafficking in marijuana. He offered only his own testimony, to which there were no rebuttal witnesses. He was found guilty and, upon appeal, the Twelfth District stated that the credibility of the defense was properly in the hands of the trial court. We agree.

In the case *sub judice*, Jackson raised a similar affirmative defense, R.C. 2925.03(F), contending that the quantity grown was solely for personal use. Upon cross-examination, Jackson admitted that if his girlfriend took some of his marijuana, he would not care. He also admitted that if he were with her and she wanted to smoke some of it, he would give it to her. There is competent credible evidence upon which a jury could find that Jackson did not meet his burden of proof. Accordingly, for all of the foregoing reasons, Jackson's fourth assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, J., concurs.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent.

The courts somehow lose their perspective when dealing with drug cases. The legislature expressly created the personal use exemption for marijuana much in the same way it implicitly allowed a personal use exemption in the liquor control law, R.C. Chapter 4303. *Spak v. State* (1934), 48 Ohio App. 371, 1 O.O. 39, 194 N.E. 439.

In reliance on this personal exemption some people in Ohio try their hand at winemaking and there are books, specialty shops, winemaking clubs, etc., all devoted to this hobby. These amateur winemakers do not consume their entire product themselves, but serve it to other members of the family. Often the homemade wines are even served to guests who sometimes gag, but smile politely and speak of a fruity taste or a full-bodied bouquet. All this goes on without anyone running afoul of the law, because the standard test is commercialization, the profit motive.

The majority described this as a novel interpretation, yet it is what has been the standard for beer and winemaking for decades. The majority says one ought not amend under the guise of interpretation, and I most heartily agree. But where the legislature adopts a law against trafficking (commercial activity) and expressly creates an exemption for personal use (noncommercial activity), then the courts have a duty to carry out what the legislature intended. The legislature has also mandated that criminal laws be construed most favorably toward

the accused. That means that we must construe the marijuana personal use exemption liberally, and carry out the intent of the legislature.

I think the clear intent of the legislature is to go after those who grow marijuana and then go out and sell it for a profit. The legislature also intended that those who grow it for their own use to be left alone. The legislature made that distinction with the definite purpose of imposing a more severe sanction on dealers, persons motivated by profit. If the courts do not maintain that distinction, then there really is no additional penalty for the commercialized trafficking in marijuana.

This is why the war against drugs is such a dismal failure. In Eighteenth Century England, when stealing was a hanging offense, there was a saying, "Hung for a sheep, hung for a lamb." It meant that where the penalty was the same, one was better off stealing a big, valuable sheep instead of a less valuable lamb. Without intending to do so, the courts were encouraging the theft of sheep by eliminating the greater penalty for the greater crime. Without intending to do so, the majority falls into that same trap.

History repeats itself, but all I can do is watch and dissent.

Thus, I dissent.