DECISION
In 1988, defendant-appellant, Bruce Lower, entered a plea of guilty to one count of a three-count indictment. In accordance with appellant's plea, the trial court found appellant guilty of one count of involuntary manslaughter in violation of R.C. 2903.04, and sentenced him to serve a term of ten to twenty-five years; nolle prosequis were entered for the remaining two counts of the indictment. In August 1998, pursuant to R.C. 2950.09(C), the trial court conducted a hearing to determine whether appellant was a sexual predator. At the conclusion of appellant's hearing, the trial court determined that appellant's manslaughter conviction was a sexually-oriented offense and found by clear and convincing evidence that appellant fit the criteria of a sexual predator. Appellant appeals the judgment of the trial court and presents the following three assignments of error for review:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT'S ADJUDICATION OF THE DEFENDANT AS A SEXUAL PREDATOR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR II OHIO REVISED CODE SECTION 2950.09, AS APPLIED, VIOLATES THE EX POST FACTO CLAUSE OF SECTION 10, ARTICLE I OF THE UNITED STATES CONSTITUTION.
ASSIGNMENT OF ERROR [III]
 OHIO'S SEXUAL PREDATOR LAW VIOLATES SECTION 1, ARTICLE I
OF THE OHIO CONSTITUTION.
On the night of January 15, 1987, three-year-old Laura Skinner's mother took Laura to the hospital, Laura was unconscious when she arrived at the hospital and died without regaining consciousness. Bruises of varying severity and ages covered Laura's body, including injuries to her vaginal and anal areas. Laura's cause of death was ascertained to be a bilateral subdural hematoma, contusions to the brain caused by trauma.
On January 16, 1987, Columbus police officers interviewed appellant, who dated Laura's mother and lived with them. Appellant was unemployed and babysat Laura while her mother was at work. Appellant had essentially been the only person with Laura on January 15, 1987, from approximately 8:00 a.m., until approximately 10:30 p.m., when Laura's mother returned home.
When interviewed by the police, appellant told them that he had taken Laura to Alum Creek State Park around 4:00 p.m., and that she had fallen down a steep embankment. From Alum Creek, they drove to his cousin's in Delaware to look at a piece of furniture, appellant thought Laura was sleeping and left her in the car. On the return from Delaware, he stopped briefly at his mother's house in Worthington; he did not realize Laura was unconscious until he returned home and went to pick her up to carry her inside. Appellant estimated that they returned to the apartment sometime before 8:30 p.m.
According to appellant, he spent approximately the next two hours trying to revive Laura. He explained that he had some medical training, as he had been a medic in the army and had worked as a nursing aide at a nursing home. Appellant did not want to take her to a hospital because a few months earlier Children's Services had investigated him after he took Laura to the hospital when she broke her collar bone. He finally called Laura's mother at approximately 10:00 p.m. to 10:30 p.m., and had her take Laura to the hospital.
During the interview, appellant ultimately acknowledged that, in the morning before they went to Alum Creek, he had knocked Laura away from the kitchen table to keep her from throwing up on the kitchen tablecloth and that she had fallen back against the refrigerator. Appellant told the officers that Laura had not kept food down since January 14th and that this was the only time he had hit her that day.
The crucial state's witness at appellant's R.C. 2950.09 hearing was William Moore. The police had initially interviewed Moore in February 1987, as a result of his contacting them. At the hearing, Moore testified that he met appellant in February 1987, in a holding tank waiting to go in front of the court for a bond hearing on a theft charge. Moore stated that they sat next to one another in the tank and started discussing the charges against them.
Initially, appellant told Moore he was in on charges of murder or attempted murder, later he said that he was charged with two counts of rape. Appellant told Moore that he had been babysitting his girlfriend's three or four-year-old daughter for the day and had taken her to Delaware to look at furniture. On the return drive, he stopped and bought a bottle of liquor and started drinking. While he drank, appellant made Laura play with his penis and rub him, which caused him to become excited. When appellant returned home, he took Laura into the bedroom, took off her clothes, and tried to make her perform oral sex on him. Appellant rubbed his penis on her vaginal and rectal areas and, when she refused to perform oral sex, he started to hit her; the more she refused the more he hit. When Laura eventually became quiet, appellant realized that she was unconscious and tried to revive her by putting her in a tub with ice.
Appellant told Moore that he had engaged in similar conduct with Laura before, but that she resisted more during the last incident. He also told Moore that he was interested in child pornography. Although appellant denied penetrating Laura, he told Moore that he tried to clean her vaginal and rectal areas because he knew they would check in the hospital.
Moore explained that he decided to contact the prosecutor's office and police because he had a girlfriend who had a daughter about the same age as Laura and appellant's story had horrified him. Moore denied that he asked for a deal or favor, or that anything was offered to him for his story. In June 1998, when appellant's case was in court, Moore was in jail but was not contacted by the prosecution.
Appellant testified at his hearing. Appellant did not remember Moore and denied making admissions to anyone while in the holding tank. Appellant's story of the incidents of January 15, 1987, was altered in some respects from what he had originally told the police. Notably, appellant testified that Laura collapsed soon after hitting her head on the refrigerator in the morning and never regained consciousness that day. Appellant stated that later in the day he carried Laura to the car and took her to Alum Creek and that he fell down a hill while carrying her. Appellant stated that he headed to Delaware around sundown and returned to his apartment sometime between 6:30 and 8:00 p.m. By the time he returned to the apartment, appellant stated he was becoming frantic and that this was when a great deal of Laura's injuries were probably inflicted. Appellant explained that he was trying anything to bring her around, including slapping her face, shaking her, and biting her on the leg. When appellant discovered that Laura's phlegm was very dark, he checked her vaginal and anal areas in an attempt to discover if she had internal bleeding. At some point during the evening, appellant bathed Laura; he called her mother at approximately 10:30 p.m.
At the close of the hearing, the trial court found that appellant's version of events was totally unbelievable and, despite some credibility issues as to Moore, found that he knew too many things that only the perpetrator would know and determined that his testimony was credible. Relying on Moore's testimony, the trial court found by clear and convincing evidence that appellant fit the criteria of a sexual predator.
In support of his first assignment of error, appellant asserts that the state failed to meet its burden to prove by clear and convincing evidence that appellant is a sexual predator, and that the trial court's adjudication of appellant as a sexual predator is against the manifest weight of the evidence.
When a conviction is challenged based on a manifest weight of the evidence, the appellate court sits "as a thirteenth juror." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. The court reviews "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. A conviction should only be reversed as against the manifest weight of the evidence in the exceptional case when the evidence weights heavily against the conviction. Id. at 387. Weight of the evidence is not a mathematical question — it is concerned with the greater amount of credible evidence. Id.
Clear and convincing evidence is a degree of proof that is more certain than "preponderance of the evidence" but not as certain as proof "beyond a reasonable doubt" in criminal cases; it is that degree of proof that will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
R.C. 2950.01(E) defines sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(D)(3) defines "sexually oriented offense" to include a violation of R.C. 2903.04(A) "that is committed with a purpose to gratify the sexual needs or desires of the offender[.]"
Appellant notes that the trial court relied solely on Moore's testimony and contends that, when the entire record is reviewed, the trial court's finding that his manslaughter offense is a sexually-oriented offense is against the manifest weight of the evidence. In support of this argument, appellant notes that no rape charge was brought against him, the prosecutor did not allege that Laura had been sexually assaulted at the plea hearing, appellant repeatedly denied any sexual misconduct with Laura, and there was no forensic evidence of sexual activity.
Because a person may commit involuntary manslaughter with a purpose to gratify his sexual needs or desires, without simultaneously committing the offense of rape, the facts that appellant was not charged with rape and that no semen was found on Laura's body do not weigh heavily against the trial court's finding that appellant committed a sexually-oriented offense. Nor is the fact that the prosecutor did not make allegations of sexual assault at the plea hearing compelling evidence against a finding that appellant committed a sexually-oriented offense. Sexual assault is not an element to involuntary manslaughter and, at the time of appellant's plea hearing, the present R.C. Chapter 2950 had not been enacted.
As appellant notes, and the trial court stated at the hearing, the credibility of Moore's testimony is the key to whether appellant was properly found to be a sexual predator. While appellant has consistently denied sexually molesting Laura, Moore's testimony supports a contrary finding. It is well-established that the weight to be given the evidence and the credibility of witnesses are primarily for the trier of facts.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In turn, the trier of facts may believe all, part or none of the testimony of each witness. State v. Jackson (1993), 86 Ohio App.3d 29, 33. Thus, the trial court was free to find Moore's testimony credible and to conclude that appellant had committed the offense of involuntary manslaughter with the purpose of gratifying his sexual needs or desires.
Appellant also argues that the state failed to present any evidence at his hearing to support the trial court's finding that he is likely to engage in the future in a sexually-oriented offense.
R.C. 2950.09(B)(2) sets forth the criteria for a court to consider when determining whether an offender is a sexual predator, and provides as follows:
(2) In making a determination under divisions (B)(1) and
 (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct."
The trial court considered the factors of R.C. 2950.09(B)(2) and found by clear and convincing evidence that appellant fit the statutory criteria of a sexual predator. The trial court noted that Laura was three years old, the contact described by appellant to Moore had occurred before and established a pattern of abuse, and the photos taken of Laura at the hospital established beyond question that cruelty was involved. The court also commented that it questioned appellant's mental stability at the time the events occurred. Finally, the court referred to appellant's denial of his actions continuing to the time of the hearing and stated that he found appellant's story totally unbelievable.
This court has previously found that, because of the deeply ingrained and powerful social taboo against sexual relations with young children, an offender whose victim is a young child is more likely to engage in the future in another sexually-oriented offense than one whose victim is not a very young child. State v. Ferguson (Mar. 31, 1998), Franklin App. No. 97APA06-858, unreported (1998 Opinions 985). Based upon Laura's age and the other factors the trial court discussed, the trial court's finding that appellant is likely to engage in the future in one or more sexually-oriented offenses is not against the manifest weight of the evidence.
Accordingly, for the above reasons, appellant's first assignment of error is overruled.
In his second assignment of error, appellant asserts that, as applied, R.C. 2950.09 violates the Ex Post Facto Clause of Section 10, Article I
of the United States Constitution. In his brief, appellant acknowledges that the Ohio Supreme Court has addressed this issue in State v. Cook (1998),83 Ohio St.3d 404, but raises it to preserve his argument for federal judicial review. In Cook, the Ohio Supreme Court held that R.C.2950.09(B)(1), as applied to conduct prior to the effective date of the statute, does not violate the Ex Post Facto Clause of Section 10, Article I
of the United States Constitution. Cook, at paragraph two of the syllabus. Accordingly, appellant's second assignment of error is overruled.
In his third assignment of error, appellant argues that the notification and disclosure provisions of Ohio's sexual predator law violate Section 1, Article I of the Ohio Constitution. This section provides as follows:
 All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.
Appellant relies on the Eleventh District decision of State v. Williams
(Jan. 29, 1999), Lake App. No. 97-L-191, unreported, which holds that the community notification provisions of R.C. 2950.11(B) are unreasonable and constitute an invalid exercise of the police power.
In Williams, the court classified R.C. Chapter 2950 as an exercise of the state's police power, citing Cook, at 417, and considered its constitutionality under the two-part test for the validity of police power legislation set forth in Benjamin v. Columbus (1957), 167 Ohio St. 103, paragraph five of the syllabus. Under Benjamin's test, an exercise of police power is valid if "it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary."
The court in Williams acknowledges that language in Cook supports a finding that R.C. Chapter 2950 meets the first prong of Benjamin and agrees with such a finding; however, the court found that Cook does not address the second prong of Benjamin. The court quotes the test for determining the reasonableness of police power legislation set forth in Froelich v.Cleveland (1919), 99 Ohio St. 376, paragraph three of the syllabus. InFroelich, the Supreme Court held that legislation is not unreasonable in the constitutional sense when the means adopted are suitable to the ends in view, are impartial in operation and not unduly oppressive, have a real and substantial relation to their purpose, and do not interfere with private rights beyond the necessities of the situation.
Applying the test in Froelich, the court in Williams found R.C. Chapter 2950 facially unconstitutional because it unreasonably interferes with rights of individuals beyond the necessities of the situation and is unduly oppressive. Regarding the notification requirements of R.C.2950.11(B), the court found them unreasonable and an invalid exercise of the police power because they needlessly interfere with a sexual predator's rights under Section 1, Article I of the Ohio Constitution to privacy, acquire property, work, and a good name and reputation. In addition to finding the community notification provisions of R.C. 2950.11(B) an invalid exercise of the police power and, therefore, unconstitutional, the court also found the registration and notice provisions of R.C. 2950.11(A),2950.06(B)(1), 2950.06(C), and 2950.07(C) unconstitutional. The court went on to conclude that the unconstitutional portions of R.C. Chapter 2950 are so connected with the general scope of the entire statute that the chapter, as applied to sexual predators, is void in its entirety. The Ohio Supreme Court has allowed a discretionary appeal in Williams. State v. Williams
(1999), 86 Ohio St.3d 1406.
This court is aware of no other appellate district in the state that has followed State v. Williams. In the recent decision of State v. Dickens
(Aug. 2, 1999), Clermont App. No. CA98-09-075, unreported, the court found that R.C. Chapter 2950 was not unreasonable under Froelich, and that it passed the second prong of Benjamin. In Dickens, the court notes that, although Cook did not directly address this issue, language found in Cook
is strongly suggestive that the statutes are a reasonable exercise of these powers and not in conflict with Section 1, Article I of the Ohio Constitution. Thus, in Dickens, the court found that the registration, verification, and the notification provisions of R.C. Chapter 2950 were not unconstitutional under Section 1, Article I of the Ohio Constitution.
This court agrees with Dickens' finding that the provisions of R.C. Chapter 2950 are not unreasonable or arbitrary and are valid police power legislation. Accordingly, this court respectfully disagrees with the Eleventh District Court of Appeals' determination in Williams.
Accordingly, appellant's third assignment of error is overruled.
Appellant's three assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
KENNEDY and BRYANT, JJ., concur.