OPINION
Defendant-appellant, Harold Singletary, appeals his conviction in the Youngstown Municipal Court on one count of aggravated menacing.
Appellant was arrested on March 16, 1998 in connection with an incident involving the alleged victim Mary Jo Hartman. Hartman and appellant had at one time been involved romantically but said relationship had ended sometime in 1996. At the time of the incident, both were involved in other relationships. Although Hartman and appellant had not had contact for approximately two years, they eventually began speaking on the telephone. Hartman was experiencing difficulty in her relationship with her new boyfriend, and appellant invited Hartman to visit him and his new girlfriend. After picking her up from her house, appellant and Hartman, along with appellant's new girlfriend, Daisy May King, spent the day of March 15, 1998 at appellant's apartment. According to Hartman, appellant drank heavily during this time.
Hartman spent the night at appellant's apartment and the following day, appellant, Hartman, and King went to the latter's apartment. Hartman testified that appellant began drinking soon after he woke and continued to do so throughout the day. Appellant was in and out of the apartment during the day and became increasingly agitated about something. Hartman conceded that she became intoxicated during this time. Later in the day, appellant's mood began to grow darker and he confronted Hartman, threatening her and pushing her. According to Hartman, appellant pushed her to the floor, banging her head, which caused her to have an epileptic seizure. Following this, King asked Hartman and appellant to leave.
Appellant drove Hartman to his apartment, stopping en route to purchase more alcohol. Shortly after arriving at the apartment, a gunshot was heard outside the apartment complex. According to Hartman, appellant became paranoid, thinking that someone was shooting at them. Appellant turned off the lights in the apartment and dragged Hartman into the bedroom. When Hartman stumbled, appellant slapped her four or five times. After retrieving several weapons from the bedroom, appellant dragged Hartman back into the living room. According to Hartman, appellant brought out a shotgun, a rifle, a .44 magnum, and a crossbow. Appellant sat with the shotgun across his lap and with the remaining weapons scattered around him. According to Hartman, appellant was mumbling something about the gunshot outside and was pacing around the apartment, turning the lights on and off. At one point during these events, Hartman claims appellant struck her in the head with the barrel of the .44 magnum, drawing blood and attempted to put the barrel of the gun in her mouth. Hartman testified to being in fear for her life at this point.
Eventually appellant left the apartment and went into the hallway of the building, at which point Hartman telephoned 911 and her boyfriend before running outside. Hartman immediately ran into police officers from the Youngstown Police Department who were in the vicinity investigating the prior gunshot. None of the officers reported seeing any visible signs of injury to Hartman although she did appear to be scared and shaken up. After informing the officers of the evening's events, Officers Blackburn and Harris went up to appellant's apartment. Appellant partially opened the door but refused to let the officers inside. Upon seeing a handgun through the partially opened door, the officers forced their way inside. Appellant was then placed under arrest.
Appellant was charged with assault, in violation of R.C.2903.13(A) and aggravated menacing, in violation of R.C. 2903.21. A jury trial commenced in the Youngstown Municipal Court on May 15, 1998. On May 18, 1998, the jury returned a verdict of not guilty on the charge of assault, but guilty on the charge of aggravated menacing. Appellant was sentenced to 180 days in jail, 90 of which were suspended, a $150 fine, and placed on probation for two years. In addition, the weapons retrieved at appellant's apartment were ordered confiscated.
Appellant brings three assignments of error. For ease of presentation, we first address appellant's third assignment of error which states:
 "THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR AGGRAVATED MENACING AND/OR THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN LIGHT OF THE FACT THAT THE ONLY EVIDENCE TO SUBSTANTIATE THE CHARGE IS THE COMPLAINANT'S TESTIMONY WHICH IS UNRELIABLE AND CONTRADICTS THE TESTIMONY OF ALL OTHER WITNESSES INCLUDING THE INVESTIGATING POLICE OFFICERS IN SEVERAL KEY AREAS [.]"
Appellant argues that the only evidence on the aggravated menacing charge was that of Hartman and that the jury chose to disbelieve Hartman's testimony as it related to the assault charge. Appellant claims that Hartman was unable to specify which weapon was pointed at her and points to various other inconsistencies in Hartman's testimony, claiming that her testimony was so riddled with inconsistencies that it cannot support appellant's conviction.
With respect to the sufficiency of the evidence, plaintiff-appellee, the State of Ohio, responds that Hartman testified that appellant put a loaded gun in her face and that she feared him doing her serious physical harm. In addition, appellee argues that the police officers testified that Hartman ran out of the building in a scared state and that weapons were found scattered throughout the apartment. According to appellee, the evidence was sufficient to support the conviction, and the jury did not lose its way or create a manifest miscarriage of justice in finding appellant guilty.
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Smith, supra, at 113.
Alternatively, in determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Thompkins, supra, at 387. "Weight of the evidence concerns `the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial.Id., at 390, (Cook, J., concurring). "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict." Id., at 388. (Emphasis sic.)
Appellant was convicted of aggravated menacing, in violation of R.C. 2903.21, which provides as follows:
 "(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person, such other person's unborn, or a member of the other person s immediate family."
Hartman testified that appellant had tried to stick the .44 magnum into her mouth but that she had pulled it away. The weapon used was twice identified by Hartman as State's Exhibit 1, a .44 magnum handgun. Hartman stated that at that point in time she was shaking with fear and believed she was going to die. None of this testimony was controverted. The only other witness to the events inside appellant's apartment was appellant himself who did not testify in his own defense. This evidence, when viewed in a light most favorable to appellee, was more than sufficient to warrant a conviction for aggravated menacing.
Nor does the record demonstrate that the jury lost its way in resolving the alleged inconsistencies in Hartman's testimony. The jury did not believe Hartman's testimony that she had been struck in the head with the handgun presumably because her claim that she was bleeding as a result was controverted by the testimony of the police officers who saw no signs of injury. However, Hartman's claim regarding the handgun being placed in her mouth went uncontroverted by appellant, and, as such, the jury was entitled to believe Hartman's testimony in this matter. The trier of fact is free to believe all, part, or none of the testimony of each witness. State v. Jackson (1993), 86 Ohio App.3d 29, 33. A jury may separate the testimony as they wish according to what is credible to them. State v. Mastel (1971), 26 Ohio St.2d 170, 177. The verdict of acquittal on the assault charge demonstrates that this is precisely what the jury did in the instant case. As such, appellant's conviction was not against the manifest weight of the evidence.
Accordingly, appellant's third assignment of error is without merit.
Appellant's first and second assignments of error both relate to the forfeiture of appellant's weapons and will be treated together. Appellant's first and second assignments of error state:
 "[1] THE FORFEITURE BY DEFENDANT-APPELLANT OF THREE FIREARMS AND ONE CROSSBOW IS A VIOLATION OF DUE PROCESS, IS AN UNLAWFUL TAKING AND IS NOT IN COMPLIANCE WITH R.C. SEC. 2933.41, THE OHIO STATUTE GOVERNING FORFEITURE."
 "[2] THE FORFEITURE OF DEFENDANT-APPELLANT'S WEAPONS CONSTITUTES A VIOLATION OF THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS."
Appellant argues that appellee did not file a petition for forfeiture and that no evidentiary hearing was conducted as required by R.C. 2933.43 prior to the trial court's order of forfeiture. In addition, appellant notes that none of the weapons were unlawful articles in and of themselves, nor was it unlawful for appellant to possess them. Even assuming State's Exhibit 1 was used to commit aggravated menacing on Hartman, appellant notes that there was nothing to indicate the remaining weapons were used in the commission of the offense.
Appellant also argues that the forfeiture constitutes multiple punishments for a single offense in violation of the Ohio and United States constitutional prohibitions against double jeopardy. Appellant notes that the forfeiture did not occur until after he had been sentenced which made it a separate criminal penalty.
In response, appellee claims that all of the weapons were used somehow in the commission of the offense and that therefore appellant lost all rights to possession. In addition, appellee claims that, forfeiture was ordered in the same proceeding in which appellant was sentenced and therefore did not violate double jeopardy.
R.C. 2933.41 specifically deals with the disposition of property that has been lawfully seized and is in the custody of a law enforcement agency, while R.C. 2933.42 and 2933.43 deal with the disposition of contraband. It is a well established principle of Ohio law that forfeitures are not favored in law or equity.State v. Johns (1993), 90 Ohio App.3d 456, 459. No forfeiture may be ordered unless the expression of the law is clear and the intent of the legislature manifest. Id. In addition, due process requires that proceedings seeking a disposition of property in forfeiture comply with the Rules of Civil Procedure. State v.Gaines (1990), 64 Ohio App.3d 230, 236.
Nothing in the record indicates that appellee sought the forfeiture of appellant's weapons or filed a petition to that effect. Rather, the trial court appears to have sua sponte
ordered the forfeiture without a hearing on the matter and without presenting an opportunity for appellant to show why the weapons should not be forfeited.
The trial court noted that the offense appellant was convicted of was a crime of violence and that appellant had pistol whipped Hartman. R.C. 2933.41(C) provides as follows:
 "A person loses any right he may have to the possession, or the possession and ownership of property, if any of the following applies:
 "(1) The property was the subject, or was used in a conspiracy or an attempt to commit, or in the commission of an offense other than a traffic offense, and such person is a conspirator, accomplice or offender with respect to the offense."
With respect to State's Exhibit 1, the .44 magnum, the evidence clearly established that the weapon was used in the commission of the offense. Thus, appellant lost any right to possess the weapon pursuant to R.C. 2933.41(C)(1), and was precluded from claiming it. State v. Grundy (Dec. 9, 1998), Summit App. No. 19016, unreported. Although no particular procedure is established for accomplishing the forfeiture of property pursuant to R.C.2933.41(C)(1), that provision appears to permit a trial court, as part of a judgment of conviction, to order the forfeiture of property used in the commission of an offense. State v. Hanauer
(May 3, 1995), Montgomery App. No. 14492, unreported.
However, with respect to the remaining weapons, there is nothing in the record to suggest any of them were used in the commission of the aggravating menacing charge, nor any indication that appellant was not lawfully in possession of them at the time of the offense. As such, the trial court erred in ordering the forfeiture of said weapons in the absence of a hearing to determine whether or not the weapons were subject to forfeiture.
Accordingly, with respect to the conviction for aggravated menacing and the forfeiture of the .44 magnum, the decision of the trial court is hereby affirmed. However, with respect to the remaining weapons, the trial court's order of forfeiture is vacated and the matter remanded for further proceedings consistent with this opinion.
Cox, J., concurs.
Waite, J., concurs.
APPROVED:
 _______________________________ Gene Donofrio, Judge