DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Leonard Thompson has appealed from his conviction in the Lorain County Court of Common Pleas of felonious assault. This Court affirms.
 I {¶ 2} On January 22, 2004, an indictment was filed against Defendant-Appellant Leonard Thompson for one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree; one count of attempted robbery in violation of R.C. 2923.02(A)/2911.02(A)(1), a felony of the third degree; and one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree.
 {¶ 3} On January 28, 2004 Appellant waived reading of the indictment and entered not guilty pleas to all counts in the indictment.
 {¶ 4} On June 30, 2004 a supplemental indictment was filed against Appellant for one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree with a firearm specification and one count of attempted robbery in violation of R.C. 2923.02(A)/2911.02(A)(1), a felony of the third degree with a firearm specification. Appellant waived reading of the supplemental indictment and again entered not guilty pleas to the charges in the indictment.
 {¶ 5} Prior to trial, Appellant and the State stipulated to the operability of the firearm at issue. Also prior to trial, per the State's motion, all charges in the original indictment were dismissed as was the attempted robbery with a firearm specification in the supplemental indictment. Accordingly, the State proceeded to trial on the felonious assault with firearm specification count from the supplemental indictment.
 {¶ 6} A jury trial commenced on February 8, 2005 and on February 10, 2005 the jury returned a verdict of guilty on the felonious assault count, but not guilty on the gun specification.
 {¶ 7} On February 25, 2005, Appellant renewed his Crim. R. 29 motion and filed a motion for judgment of acquittal or in the alternative for a new trial. The trial court denied the motion on March 1, 2005. Appellant was sentenced to four years incarceration for his felonious assault conviction.
 {¶ 8} Appellant has timely appealed his conviction, asserting one assignment of error.
 II Assignment of Error Number One
"THE JURY VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 9} In his sole assignment of error, Appellant has argued that his conviction was both against the manifest weight of the evidence and based upon insufficient evidence. Specifically, Appellant has argued that the State did not present sufficient evidence that Appellant specifically intended to cause physical harm to the victim by means of a deadly weapon and that the verdict was against the manifest weight because the victim's testimony was inconsistent. We disagree.
 {¶ 10} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 11} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 12} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 13} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 14} Appellant was convicted of felonious assault. Pursuant to R.C. 2903.11(A)(2), "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance." Attempt is defined by R.C.2923.02(A) as follows:
"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
One acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
 {¶ 15} The State presented testimony from two eye-witnesses, a forensic investigator, and three police officers. Antonio Dower ("Dower") testified to the following. He knew Abraham Reynolds ("Reynolds"), the alleged victim, for many years and met Appellant through Reynolds. After admitting to a felony theft conviction, Dower recalled the events of October 22, 2003. He was watching Reynolds and Appellant play a Play Station 2 video game at Appellant's house. Another man Dower did not know was also in the house. Reynolds and Appellant were gambling as part of the game; Reynolds was betting money and Appellant was using the Play Station as his bet. Reynolds won the bet and he and Appellant started wrestling for the Play Station. Appellant then went upstairs and as Dower and Reynolds were leaving Appellant came back downstairs with a gun. The gun was black with a long handle; Dower identified the State's gun exhibit as the gun Appellant had. Appellant came onto the porch where Dower and Reynolds were and "stop[ed] [Reynolds.]" Appellant pointed the gun at Reynolds and told Reynolds to give him all the money. Appellant and Reynolds then talked and argued and Dower went inside to get help from the other man in the house. Dower then heard the gun fire and he went out the back door. Dower did not believe Appellant meant to fire the gun. Reynolds then called the police from Dower's house.
 {¶ 16} Dower testified on cross-examination that as Appellant attempted to hit Reynolds with the gun Reynolds blocked the gun and it fired.
 {¶ 17} The State next called Marty Lewis ("Lewis") of the Bureau of Criminal Identification and Investigation. Lewis testified that Appellant's hands tested negative for gun shot residue, but that cannot be interpreted to mean that he did not fire a weapon; such a conclusion cannot be conclusively determined.
 {¶ 18} Reynolds reluctantly testified to the following for the State. He wished he could take back the police report he filed and only appeared because he was subpoenaed. Reynolds confirmed that he was friends with Dower and Appellant. On the evening in question, Appellant and Reynolds were talking, laughing, and playing Play Station; as Dower testified they were gambling on the game and the Play Station was bet. As Reynolds attempted to take the Play Station as part of his winnings, Appellant told him not to and the two "tussle[d]." Reynolds decided to leave the Play Station and leave Appellant's house; Appellant got mad at Reynolds and "ran upstairs and got a gun." Reynolds was on the porch when Appellant came downstairs with the gun; Appellant was saying he wanted his money back. Reynolds was unable to describe the gun. Appellant was waving the gun in the direction of Reynolds and Dower and when Appellant went to kick Reynolds, Reynolds slipped and the gun went off. Reynolds testified that he did not believe Appellant was trying to hurt him. After reviewing his statement to the police from the night of the shooting Reynolds recalled Appellant saying "f____ you" and then letting him leave. At some point during the evening Appellant and Reynolds took each others cell phones, but they each received their own phone back after the police arrived. Throughout Reynolds' testimony he stated that he did not want Appellant to get into trouble; he especially did not want Appellant sent to prison.
 {¶ 19} Patrolman Eric Gonzalez of the Lorain City Police Department ("LCPD") testified next to the following. He was working during the incident in question and he and another officer responded to a 911 call stating that a male had been shot at. Upon arrival at the scene he spoke with Reynolds and Dower. Reynolds wanted to press charges and expressed anger and fear over the incident. "He appeared upset and shaken that he had been shot at." Dower's statements about the incident were consistent with Reynolds' account of what happened. Neither Reynolds nor Dower indicated that the shooting was an accident. Appellant told Patrolman Gonzalez that he and Reynolds had been playing Play Station, betting on the games, and when Reynolds attempted to take the Play Station Appellant stopped him. After obtaining consent from the homeowner and a possible location of the gun, the police searched and found a gun similar to the one described by Reynolds and Dower in the home where Appellant was staying.
 {¶ 20} Patrolman Gonzalez testified to the following on cross-examination. It could not be said with any type of certainty that a 9mm shell casing found at the scene on the porch came from the weapon recovered on the scene. The gun was not tested for gunshot residue or fingerprints and Reynolds and Dower were not separated for questioning.
 {¶ 21} Patrolman Gonzalez testified to the following on re-direct examination. Appellant was the only person tested for gun-shot residue because he was the only person accused of a crime. The 9mm gun was found upstairs from where the 9mm shell casing was found. The police did not have any evidence that someone other than Appellant fired the gun. Patrolman Gonzalez believed the gun recovered in the home was the one fired at Reynolds.
 {¶ 22} Sergeant Martin Carrion of the LCPD testified to the following. He also responded to Reynolds' 911 call. Reynolds was "upset, shocked, somewhat scared " when Sgt. Carrion arrived on the scene. Based on the evidence before him, Sgt. Carrion determined that Appellant had fired the gun at Reynolds. There was no evidence to indicate it was an accidental shooting. Appellant denied using any type of weapon. Sgt. Carrion also believed that the gun found in the home matched the description of the gun given by Reynolds. Reynolds and Dower were not tested for gun-shot residue because there was no evidence that they fired a gun.
 {¶ 23} Patrolman Eladio Andujar of the LCPD testified to the following. He spoke with Reynolds in December, months after the incident, and Reynolds was still "very upset" about what had happened. There was no allegation that the shooting was the result of an accidental discharge. Patrolman Andujar also stated that Reynolds and Dower were not checked for gun powder residue because they were not accused of firing a gun. Patrolman Andujar had no evidence that someone besides Appellant fired the gun.
 {¶ 24} After the admission of exhibits, the State rested its case and Appellant made a Crim.R. 29 motion. The trial court denied the motion. Appellant rested without presenting any evidence.
 {¶ 25} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of felonious assault. The record contained evidence from which the jury could have found that Appellant knowingly caused or attempted to cause physical harm to Reynolds by waiving the gun in front of him, pointing it at him, and subsequently firing the gun. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the jury chose to believe the testimony of the police officers and Reynolds' original statements to the police over claims that the shooting was an accident or defense speculation that someone else fired the gun. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423,2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993),86 Ohio App.3d 29, 33. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 26} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency."Roberts, supra at 4. Accordingly, having found that Appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's first assignment of error is without merit.
 III {¶ 27} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Moore, J. Reece, J. concur.
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)