DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Michael E. Luks has appealed from his conviction in the Medina County Court of Common Pleas of felonious assault. This Court affirms.
 I {¶ 2} On January 6, 2005, Defendant-Appellant Michael E. Luks was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree ("Count I"), and one count of felonious assault in violation of R.C.2903.11(A)(1), a felony of the second degree ("Count II"). Appellant was arraigned on January 18, 2005 and pled "not guilty" to all counts in the indictment.
 {¶ 3} On March 21, 2005, a jury trial commenced and on March 23, 2005, the jury returned a verdict finding Appellant guilty of Count I and not guilty of Count II. On April 29, 2005, Appellant was sentenced to two years in prison.
 {¶ 4} Appellant has appealed his conviction, asserting two assignments of error.
 II Assignment of Error Number One
"THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT AND APPELLANT'S FELONIOUS ASSAULT CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE APPELLANT USED HIS POCKETKNIFE IN SELF-DEFENSE AND DID NOT `KNOWINGLY' CAUSE OR ATTEMPT TO CAUSE PHYSICAL HARM."
 {¶ 5} In his first assignment of error, Appellant has argued that the evidence presented at trial was insufficient to support his conviction and said conviction was against the manifest weight of the evidence. Specifically, Appellant has argued that the State failed to prove a material element of the felonious assault charge and that the evidence established his defense of self-defense. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus. See, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} In State v. Roberts, this Court explained: "sufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted). Accordingly, we first turn to the issue of whether Appellant's conviction was against the manifest weight of the evidence.
 {¶ 8} This Court has held that:
"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 9} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12,19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 10} Appellant was convicted of felonious assault. Pursuant to R.C. 2903.11(A)(2): "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Attempt is defined by R.C.2923.02(A) as follows: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." One acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
 {¶ 11} Appellant has contended in his brief that the State failed to establish that Appellant knowingly caused physical harm to the victim, Christian Guk. We disagree with Appellant's contention for two reasons. First, Appellant has failed to recognize that the crime for which he was convicted included knowingly attempting to cause physical harm as an element. Appellant has only argued that he did not knowingly cause Guk's injury, but yet freely admits in his brief that he was attempting to "poke" Guk. Secondly, and most importantly, we find that Appellant's conviction was not against the manifest weight of the evidence
 {¶ 12} At trial, the State produced the testimony of five witnesses. Christian Guk ("Christian") testified that on December 20, 2004 he, his brother, and their girlfriends kept a 5 p.m. tee time at the Bunker Hill indoor golf facility. Christian testified that while at Bunker Hill, he consumed alcoholic beverages, but maintained that he was not drunk. The group left Bunker Hill at approximately 10:00 p.m. and traveled to a bar located down the street from Christian's parents' house. Christian testified that the group left that establishment and went to his parents' home between 11:00 p.m. and midnight, where they ate dinner and opened birthday presents. At approximately 1:00 a.m., Christian and his brother's girlfriend, Sheila Silvestri, went outside to smoke a cigarette on the front porch. Appellant, who was living at the house at the time, joined them. Christian testified that Appellant asked him for a cigarette at which time he and Christian exchanged hostile words. During the exchange, Appellant turned to walk away, Christian pursued, and grabbed Appellant by the shoulder. Christian denied hitting, swinging at, brandishing a weapon at or threatening Appellant in any way.
 {¶ 13} Christian testified that when he grabbed Appellant's shoulder, Appellant struck him and he reacted by pushing Appellant away. Christian testified that he had never had an altercation with Appellant before, that Appellant gave him no warning, and that Appellant did not express any fear or concern for his safety. After this confrontation, Appellant got in his car and drove away, while Christian went back inside the house where he discovered a basketball sized spot of blood on his tee shirt. Christian's father immediately drove him to the emergency room where he received treatment for a stab wound. Christian was treated and released two days later.
 {¶ 14} On cross-examination, Christian testified that he had nine drinks on the night in question. He testified that when Appellant first came out to the porch and asked for a cigarette, Appellant was not aggressive. Christian admitted that he initiated the verbal confrontation with Appellant, but denied that he was drunk or that alcohol influenced his behavior in any way. He also admitted that he was the first to initiate physical contact while Appellant was walking away.
 {¶ 15} Dr. David Levine, the emergency room physician who treated Christian, testified that he first attended to Christian at 1:30 a.m. on December 21, 2004. Dr. Levine testified that Christian complained of a stab wound to his abdomen and that upon physical examination he determined the wound to be almost an inch in width and depth. Dr. Levine testified that a knife wound to the abdomen, if serious enough, may sever or damage the bowels, intestines or other organs, increasing the risk of complications such as significant blood loss, peritonitis and septic shock, which can be fatal. Dr. Levine testified to a reasonable degree of medical certainty that a pocket knife with a three and one half inch blade could inflict death upon a person. Dr. Levine further testified to a reasonable degree of medical certainty that death or serious physical injury could result if a person were to swing such a weapon into another person's abdomen.
 {¶ 16} Dr. Levine went on to testify that Christian's CAT scan indicated the presence of free air within the muscle of the abdominal. He testified that the presence of free air necessitated a point of entry, which in Christian's case would be the wound on his abdomen. Dr. Levine testified that in order to have that point of entry, the knife would have had to cut through the skin, through the fatty tissue and into the muscle. He testified that the CAT scan was inconclusive as to whether there was any injury to the abdominal cavity.
 {¶ 17} Dr. Levine testified that the nurse's notes indicated that Christian consumed eight cocktails on December 20, 2004. He also testified that the nurse's notes stated that Christian was alert and acted appropriately. Dr. Levine testified that Christian was not belligerent and did not appear to be clinically intoxicated.
 {¶ 18} On cross-examination, Dr. Levine testified that he interpreted clinically intoxicated to mean stumbling, slurring of words, and staggering. Dr. Levine also verified that the CAT scan indicated no evidence of an intra-abdominal penetration. Dr. Levine testified that he was not concerned about bowel involvement during his examination of Christian and that the 24 hour observation was precautionary in nature. Dr. Levine testified that Christian presented with an injury through the skin, the fatty tissue and into the muscle and the complications he testified to only existed as potential complications. Dr. Levine testified that he found no evidence of anything from the wound that could have killed Christian initially, but that the potential for serious injury or death existed and mandated the observation.
 {¶ 19} On redirect, Dr. Levine testified that the knife at issue, plunged into an abdomen, could cause a substantial risk of serious bodily harm. He testified that a drug screen was ordered and it was negative.
 {¶ 20} Lawrence Guk ("Lawrence"), Christian's father, testified that on December 20, 2004 Appellant was living with him and his wife at their 1609 Marks Road home. Lawrence testified that he talked with Christian when he got back from Bunker Hill and that they exchanged presents. Lawrence testified that Christian did not appear to be intoxicated. Lawrence testified that he went to bed and his wife woke him to take Christian to the hospital. Lawrence testified that when he came downstairs he observed Christian holding his side and noticed a fairly large amount of blood on his shirt. Lawrence then drove Christian to the hospital.
 {¶ 21} On cross-examination Lawrence testified that Christian's behavior in no way indicated that he had consumed nine cocktails prior to coming to the house.
 {¶ 22} Patrolman Brian Schmitt ("Ptl. Schmitt") testified that while on patrol on December 20, 2004, he overheard a dispatch referencing the Marks Road stabbing and the dark colored Buick in which the suspect had left the scene. Ptl. Schmitt testified that he then observed a black Buick traveling at a high rate of speed, activated his radar and received a readout of 48 m.p.h. in a 35 m.p.h. zone.
 {¶ 23} Ptl. Schmitt testified that Appellant pulled into a gas station, parked the car and began walking toward the building. Ptl. Schmitt ordered Appellant to stop and he did. Ptl. Schmitt testified that he asked Appellant his name and Appellant responded that it was Michael Luks. Ptl. Schmitt testified that he handcuffed Appellant and read him his Miranda rights. Ptl. Schmitt testified that Appellant admitted that he stabbed Christian, but asserted that Christian had jumped him. Ptl. Schmitt testified that Appellant openly told the officers that he was carrying a knife.
 {¶ 24} On cross-examination, Ptl. Schmitt testified that Appellant did not try to run, or lie about his name or deny that he had the knife. He also testified that Appellant stated that he had stabbed Christian but had asserted it was only because Christian was bigger and had jumped him.
 {¶ 25} On redirect, Ptl. Schmitt testified that Appellant was not injured, did not claim to be injured and did not request medical treatment.
 {¶ 26} Officer John Witthuhn ("Officer Witthuhn"), of the Brunswick Hills Police Department, testified that on December 20, 2004, he responded to 1609 Marks Road regarding a stabbing that had occurred on the premises. Officer Witthuhn testified that after interviewing the family, he responded to the hospital and interviewed Christian. Officer Witthuhn testified that Christian did not appear to be under the influence of alcohol. Officer Witthuhn testified that he proceeded to the Brunswick Police Department to secure the evidence and interview Appellant. Officer Witthuhn testified that he informed Appellant of his constitutional rights and that during his interview Appellant did not state that Christian grabbed him or that he was harmed in any way. Officer Witthuhn then transferred Appellant to the jail of the Medina County Sheriff's office, where during intake Appellant stated "I should have killed the prick."
 {¶ 27} On cross-examination, Officer Witthuhn testified that although Appellant did not say anything about Christian grabbing him, he did say that Christian threw two punches at him that failed to connect. He also testified that Appellant indicated that he wasn't trying to stab Christian but was trying to scare him and poke him.
 {¶ 28} At the close of the State's case in chief, defense counsel moved for acquittal pursuant to Crim.R. 29(A). The trial court overruled the motion.
 {¶ 29} Appellant was the sole witness for the defense. Appellant testified that on December 20, 2004, he was living with his sister Christina Guk at 1609 Marks Road. Appellant testified that he was sleeping when Christian returned from playing golf at Bunker Hill. He testified that heard them making noise downstairs. Appellant testified that he went outside to go buy a pack of cigarettes and saw Christian and Silvestri on the front porch. Appellant testified that he asked Christian for a cigarette, whereupon he and Christian exchanged words. Appellant testified that when he turned to walk away, Christian took two swings at him and grabbed him from behind. At this point, Appellant testified, he reached into his pocket for the knife and swung at Christian.
 {¶ 30} Appellant further testified that when Christian attacked him, he looked as if he could kill somebody and was very angry. Appellant testified that he weighed only 150 pounds and was older than Christian. Appellant further testified that he had a bad lung and bad back. Appellant testified that he believed he was in danger and that Christian might hurt him, so he wanted to scare the younger man off. Appellant testified that after the incident, Christian turned and walked back towards the house and Appellant, not knowing he had stabbed Christian, left in his vehicle to go buy the cigarettes.
 {¶ 31} Appellant testified that he went to the gas station and then returned to 1609 Marks Road. Appellant testified that his sister met him, informed him that he had stabbed Christian, and told him to leave. Appellant left, intending to go stay with his mother in Cleveland, when he was pulled over by the police. Appellant testified that he cooperated with the police. Appellant testified that his statement about killing Christian was made in anger and frustration. Appellant denied threatening Christian and contended that he only used his knife to get Christian off of him.
 {¶ 32} On cross-examination, Appellant testified that Christian threw the punches at him while his back was turned. Appellant testified that he could see the punches because he was looking over his shoulder at the time. Christian was not directly behind Appellant, but four or five steps away when he threw the punches. Appellant testified that Christian simply missed with the punches and then grabbed him from the front. Appellant testified that he got scared and lunged at Christian with the knife. Appellant denied trying to get into the gas station to dispose of the knife after he noticed the police behind him.
 {¶ 33} At the close of the defense's case, defense counsel renewed the Crim.R. 29 motion. The trial court overruled the motion.
 {¶ 34} After careful review of the entire record, weighing the evidence and considering the credibility of the witnesses, this Court cannot conclude that the jury clearly lost its way when it found Appellant guilty of felonious assault. We reiterate that our standard of review is deferential and that the weight of the evidence and credibility of witnesses is primarily the purview of the trier of fact. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 35} This Court has stated that "[a] conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable, theory of innocence." State v.Cremeans, 9th Dist. No. 22009, 2005-Ohio-261, at ¶ 7. Appellant's conviction was not against the manifest weight simply because the jury chose to believe the prosecution testimony. SeeState v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness."Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 36} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two
"THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING THE IRRELEVANT AND UNFAIRLY PREJUDICIAL EVIDENCE OF APPELLANT'S STATEMENT THAT `I SHOULD HAVE KILLED THE PRICK,' WHICH STATEMENT WAS MADE OUT OF ANGER AND FRUSTRATION ABOUT HIS SITUATION AT THE COUNTY JAIL HOURS AFTER THE PHYSICAL ALTERCATION TOOK PLACE."
 {¶ 37} In his second assignment of error, Appellant has argued that the trial court erred by admitting into evidence Appellant's statement "I should have killed the prick" made hours after the altercation took place. Specifically, Appellant has argued that the statement was irrelevant and unfairly prejudicial. We disagree.
 {¶ 38} This Court has held that a trial court is "afforded broad discretion in ruling on the admissibility of evidence, and its decision will not be overturned unless there is a clear abuse of discretion and material prejudice to the defendant." State v.McDaniel, 9th Dist. No. 05CA008690, 2005-Ohio-5809, at ¶ 9 citing State v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court.Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 39} Evid.R. 402 provides that generally, relevant evidence is admissible and irrelevant evidence is not admissible. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Finally, even relevant evidence may still be inadmissible if its probative value is "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
 {¶ 40} Appellant has argued that his statement is wholly irrelevant as it was simply an angry outburst made hours after the altercation and in no way reflects upon Appellant's state of mind at the time of the stabbing. Appellant has also argued that even if we find the statement to be relevant its probative value was substantially outweighed by the danger of unfair prejudice. We disagree.
 {¶ 41} We find Appellant's statement to be relevant in that the statement tends to make it more probable that Appellant "knowingly" caused or attempted to cause physical harm to another. We reiterate that a person acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Appellant's statement tends to make it more probable that he was aware that his conduct would probably cause a certain result or be of a certain nature.
 {¶ 42} Moreover, we find that any prejudice to Appellant did not substantially outweigh the probative value of the statement. Appellant has argued that the jury misconstrued his statement and unfairly prejudiced his self-defense claim. A careful review of the record gives no indication that admission of the statement led to substantial and unfair prejudice, confusion of the issues or misleading of the jury.
 {¶ 43} Based on the foregoing, we cannot say that the trial court acted unreasonably, arbitrarily or unconscionably when it overruled Appellant's objection based on relevance and admitted Appellant's statement into evidence. Accordingly, we find that the trial court did not abuse its discretion in the admission of the evidence.
 {¶ 44} Appellant's second assignment of error lacks merit.
 III {¶ 45} Appellant's two assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. Boyle, J. concur.