DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Bradley Williams has appealed from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} On October 19, 2004, Defendant-Appellant Bradley Williams was indicted on one count of aggravated burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree, and one count of felonious assault, in violation of R.C.2903.11(A)(1)/2903.11(A)(2), a felony of the second degree. Appellant waived reading of the indictment and entered not guilty pleas to both counts.
 {¶ 3} A bench trial commenced on August 17, 2005 and the trial court found Appellant guilty as charged in the indictment. Appellant was sentenced to four years incarceration on the aggravated burglary conviction and three years incarceration on the felonious assault conviction; the sentences were ordered to run concurrent to each other.
 {¶ 4} Appellant has timely appealed his conviction and sentence, asserting three assignments of error.
 II Assignment of Error Number One
"THE JURY VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 5} In his first assignment of error, Appellant has argued that his convictions were against the manifest weight of the evidence and based on insufficient evidence. Specifically, Appellant has argued that the State's case was based on conflicting testimony that was not credible and therefore, the State did not prove all of the necessary elements of the crimes charged. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (emphasis omitted).
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 9} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins,78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 10} Appellant was convicted of aggravated burglary and felonious assault. Aggravated burglary, as proscribed in R.C.2911.11(A)(1) states that:
"No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]"
Pursuant to R.C. 2903.11(A)(1), "No person shall knowingly * * * [c]ause serious physical harm to another[.]"
 {¶ 11} During the bench trial, Antonio Rivera, the victim, testified to the following. Mr. Rivera lives with his girlfriend and his two year old dog. He walks the dog 15-20 times a day in the summer and does not clean up the dog's waste. Mr. Rivera testified that on August 25, 2004, he was assaulted and injured by the Appellant. That evening, Mr. Rivera was watching TV with his dog; he had been drinking and had a "buzz." Mr. Rivera testified that he was getting tired so he started to close the door and the door was immediately kicked in by Appellant. The door hit Mr. Rivera and then Appellant started to hit him on the head with a "pipe or something[.]" Mr. Rivera was hit so hard he fell. Appellant called Mr. Rivera a "Mexican spic" and told him he was sick of Mr. Rivera's dog leaving waste in his yard. Appellant then accused Mr. Rivera of breaking into his house. Mr. Rivera was confused by Appellant's accusations. While Mr. Rivera lay on the floor bleeding, Appellant started picking furniture up and throwing it on Mr. Rivera and kicking him. All of these events occurred inside Mr. Rivera's house.
 {¶ 12} Mr. Rivera continued his testimony, testifying to the following. After Appellant left, he got up and turned on the porch light to see who had just attacked him. Mr. Rivera had never seen Appellant before. When Appellant saw the porch light come on he came back and asked Mr. Rivera if he wanted "some more." Appellant then pushed on the storm door and left in a small burgundy or red car with something on the trunk for bikes. Mr. Rivera testified that he did not hit Appellant. After Appellant left in the car, Mr. Rivera went to a local bar to ask for help and someone at the bar called the police. The police responded and took Mr. Rivera to the hospital where he received eight stitches on his forehead. Mr. Rivera did not return to his home for a few days after the incident. He identified pictures presented by the State as looking like the pipe that was used to hit him and he identified pictures of his face and other body parts as accurately reflecting his injuries. The pictures showed bruises all over Mr. Rivera's body, including a foot print on his chest, and the injuries to his head. Mr. Rivera also identified photographs depicting the inside of his house with the furniture and other items in disarray; he testified that the mess was from Appellant throwing things around.
 {¶ 13} Mr. Rivera continued to identify and testify to the photographs presented by the State. He testified that one photo showed his blood on the heating vent in his living room. Mr. Rivera testified that no part of the incident took place on the front porch. He denied breaking into Appellant's house, but he admitted that he did fail to clean up after his dog when it relieved itself on Appellant's yard. Mr. Rivera also admitted having criminal convictions for domestic violence, assault on a police officer, and theft. Mr. Rivera also identified his medical records from the hospital visit.
 {¶ 14} Mr. Rivera testified to the following on cross-examination. There was a fire in his house several days after the instant matter. The fire department determined that someone broke a bathroom window and threw in gasoline from the backyard to start the fire. Mr. Rivera became agitated during cross-examination and stated that Appellant was lucky that he (Mr. Rivera) was drunk on the night of the incident or he would have beat Appellant up. Mr. Rivera became more upset, using profanities, until the trial court told him to stop and warned him he would be in contempt. Mr. Rivera apologized. The trial court also warned defense counsel to stop approaching the witness without permission because he was not going to allow "argumentative or confrontational questioning[.]" Mr. Rivera admitted to being an unemployed alcoholic and to taking medication for mental health issues, including depression and hearing voices. He also admitted that for several days before the incident he did not take his medications. Mr. Rivera testified that he was suffering from his psychological issues the day of the incident.
 {¶ 15} The remainder of Mr. Rivera's cross-examination continued as follows. Mr. Rivera provided conflicting testimony on whether he actually saw Appellant hit him with a pipe. Mr. Rivera denied that he received some of his bruises and cuts from crawling into Appellant's house to burglarize it. He denied ever speaking to Appellant or yelling anything at him. Mr. Rivera became extremely agitated by defense counsel's questions regarding whether or not he (Mr. Rivera) looked Mexican or Indian and he told the court he was "done talking" and he used several profanities to express his anger at the situation. The trial court told Mr. Rivera he was in contempt and Mr. Rivera responded with more profanities and was found in contempt again. Next, the trial court and Mr. Rivera disagreed over whether he "slammed his microphone" or simply hit it with his hand as he tried to move it. Mr. Rivera testified that the pictures previously identified by Mr. Rivera as the inside of his home were taken two days after the incident. Mr. Rivera testified that after the bouncer at the bar called the police he was told to wait for the police at the McDonald's across the street. Mr. Rivera denied being asked to leave the bar because he was intoxicated.
 {¶ 16} On re-direct examination, Mr. Rivera reiterated his direct testimony. He also testified that when the fire was started at his home the arsonist also drew a Nazi swastika on the door and wrote "get out[.]" Mr. Rivera testified that he believed Appellant started the fire and wrote on the door.
 {¶ 17} Detective Dennis Moskal of the Lorain Police Department testified to the following. He first saw Mr. Rivera on August 27, 2004. Mr. Rivera went to the prosecutor's office and was sent to the detective bureau. Det. Moskal had attempted to make contact with Mr. Rivera on August 26, 2004, but he was not home and he did not have a phone. Det. Moskal took photographs of Mr. Rivera's injuries and interviewed him. Based on his interview and Mr. Rivera's testimony, Det. Moskal found that Mr. Rivera did not have a good grasp of the English language. Det. Moskal discussed the incident with Mr. Rivera and he described it as he did in his direct examination. Based on the information provided, Det. Moskal went to Mr. Rivera's house and took a picture of the front door with a scuff mark on it. Det. Moskal also investigated the car described by Mr. Rivera and it traced back to Appellant. Mr. Rivera also picked Appellant out of a photo identification spread. Mr. Rivera described being hit with a PVC pipe, which was recovered by a patrolman at Mr. Rivera's house the night of the incident. Det. Moskal also checked the screen door and it appeared pushed in like Mr. Rivera had described. The testimony provided by Det. Moskal regarding Mr. Rivera's statements mirrored Mr. Rivera's testimony to the court.
 {¶ 18} Det. Moskal continued his testimony as follows. He arrested Appellant on September 1, 2004. Appellant agreed to speak with Det. Moskal and said he thought it was about a scuffle he had with a neighbor. Appellant told Det. Moskal that his house was broken into and he "figured" and "assumed" it was Mr. Rivera so he went to talk to him about it. Appellant did not make a police report about the break in. Det. Moskal testified that Appellant told him he went to Mr. Rivera's house and no lights were on, as he went up to the front door he saw Mr. Rivera and the mood immediately became confrontational. Appellant admitted to Det. Moskal that he may have been too close to Mr. Rivera's space. Det. Moskal testified that Appellant told him Mr. Rivera struck him in the ribs and then the two started fighting on the porch. Appellant denied ever entering Mr. Rivera's house. Det. Moskal then identified photographs of the porch and testified that everything was in its place, the plant, plant stand, and bench were not out of place or broken. Appellant told Det. Moskal that he picked up a lamp to place between him and Mr. Rivera and it broke and glass went everywhere and that some sort of stand was also broken. Appellant also admitted to continually knocking Mr. Rivera down.
 {¶ 19} Det. Moskal continued testifying and identified several photographs he took inside Mr. Rivera's house. First he identified a broken stand inside the living room that was broken into pieces about six to ten feet from the front door. He also testified to the blood on the heat vent, which was about 20 feet from the front door. Appellant told Det. Moskal that as soon as Mr. Rivera struck him "he went spastic and the fight was on." Det. Moskal testified that he asked Appellant if he was injured and he said no. Appellant also denied going to a doctor; Appellant said his ribs were sore and showed him the area, but Det. Moskal did not see any bruising. Det. Moskal noticed that Appellant's right knuckles appeared swollen. When asked about the PVC pipe, Appellant first denied having it, but then admitted that he took it to Mr. Rivera's because he did not know what he would be getting into. Det. Moskal asked Appellant if he struck Mr. Rivera with the pipe and Appellant answered that once Mr. Rivera struck him "he had no other recourse." Det. Moskal obtained consent to search Appellant's home and found the remainder of the PVC pipe in Appellant's bedroom. Appellant denied going back to Mr. Rivera's door and asking him if he wanted "some more." Det. Moskal testified that he did not notice anything abnormal about Mr. Rivera when he interviewed him.
 {¶ 20} Det. Moskal testified to the following on cross-examination. He did not test the substance on the heat register for blood, but it appeared to be blood. He also observed blood on the carpeting throughout the living room. Det. Moskal testified to an incident between Appellant and Mr. Rivera's girlfriend a couple of days after the matter at issue and Appellant said something about wanting "some more."
 {¶ 21} On re-direct examination, Det. Moskal pointed out the broken lamp on a photograph taken of the inside the house.
 {¶ 22} The State rested its case and the trial court admitted the exhibits used during the State's case. Appellant then made a Crim.R. 29 motion and the trial court denied it.
 {¶ 23} Appellant did not present any witnesses, but did enter an agreed stipulated fact that he was treated for an injured right hand and injured ribs while incarcerated on September 2, 2004. Appellant then rested his case and renewed his Crim.R. 29 motion. The trial court again denied the motion.
 {¶ 24} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of aggravated burglary and felonious assault. The trial court was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. While not an exhaustive list, we found the following exhibits and testimony relevant in determining that Appellant's convictions were not against the manifest weight of the evidence: Mr. Rivera's injuries, which were supported by testimony, photographs, and medical records; the state of Mr. Rivera's living room, front porch, and door, which supported his testimony that Appellant kicked in his door and attacked him in his home; Det. Moskal's testimony regarding Mr. Rivera and Appellant's statements; and Det. Moskal's testimony regarding the results of his investigation.
 {¶ 25} Appellant's conviction was not against the manifest weight of the evidence simply because the trial court chose to believe the testimony of Mr. Rivera and Det. Moskal. State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Moreover, "in reaching its verdict, the [trial court] is free to believe all, part, or none of the testimony of each witness."Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33. As the factfinder, the trial court was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 26} Based on the foregoing, this Court cannot find that Appellant's convictions were against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency."Roberts, supra at 4. Accordingly, having found that Appellant's convictions were not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err when it denied Appellant's motion for acquittal. Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two
"THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A NON-MINIMUM SENTENCE ON APPELLANT, AS SUCH SENTENCE IS CONTRARY TO LAW AND NOT SUPPORTED BY THE RECORD."
 {¶ 27} In his second assignment of error, Appellant has argued that the trial court erred in imposing its sentence. Specifically, Appellant has argued that the trial court did not consider community control and that it failed to consider the R.C. 2929.12 factors. During the pendency of Appellant's appeal, the Ohio Supreme Court addressed Ohio sentencing guidelines inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. In Foster,
the Supreme Court held that portions of Ohio's felony sentencing statutes are unconstitutional and void. Accordingly, we must review Appellant's argument concerning R.C. 2929.12 in light of the Supreme Court's decision in Foster.
 {¶ 28} The Foster Court noted that "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. Therefore, while a trial court is not required to make factual findings regarding R.C. 2929.12, it still must consider the factors in its sentencing decisions.
 {¶ 29} Appellant has argued that the trial court failed to consider the R.C. 2929.12 factors. We disagree. A review of the sentencing journal entry and the sentencing transcript show that the trial court considered the R.C. 2929.12 factors in deciding Appellant's sentence. Specifically, the trial transcript shows that the trial court "balanced the seriousness and recidivism factors under R.C. 2929.12." Accordingly, Appellant's argument that the trial court failed to consider R.C. 2929.12 lacks merit and we next address Appellant's argument that the trial court erred because the sentence was more than the minimum.
 {¶ 30} Foster also changed an appellate court's standard of review for sentencing appeals from the clear and convincing standard of review to the abuse of discretion standard of review.State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶¶ 11-12. The Foster Court "concluded that trial courts have full discretion to impose a prison sentence within the statutory range" and "vest[ed] sentencing judges with full discretion" in sentencing. Foster at ¶ 100. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 31} We have reviewed the record and cannot find that the trial court abused its discretion in sentencing Appellant. Appellant was convicted of a first degree felony and of a second degree felony. Pursuant to R.C. 2929.14(A), a first degree felony conviction can result in a prison term of three to ten years and a second degree felony conviction can result in a prison term of two to eight years. R.C. 2929.14(A)(1)/(2). Appellant was sentenced to four years incarceration for the first degree felony and three years incarceration for the second degree felony; it is clear that both sentences are well within the statutory range. Moreover, the record indicates that the trial court considered all of the aspects of the general guidance statutes. In its August 26, 2005 journal entry, the trial court specifically stated that it had considered R.C. 2929.11 and R.C. 2929.12. Moreover, during the sentencing hearing the trial court stated that it had considered the "principles and purposes of sentencing under 2929.11 and balanced the seriousness and recidivism factors under 2929.12." The trial court also stated that it considered the record, oral statements, and the victim impact statement when making its decision. The trial court cited the following reasons when it imposed sentence on Appellant: Appellant's prior adult felony conviction; the serious physical harm to the victim; and Appellant's lack of remorse.
 {¶ 32} Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably in its sentencing Appellant. As previously discussed, Appellant's sentences were within the statutory ranges for felonies of the first and second degree and as stated above, post-Foster, trial courts have been vested with full discretion to impose sentences within the statutory range. Accordingly, Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three
"THE TRIAL COURT ERRED IN IMPOSING A NON-MINIMUM SENTENCE ON APPELLANT WHERE THE FACTS NECESSARY TO IMPOSE SUCH A SENTENCE HAD NEITHER BEEN PROVEN TO A JURY NOR ADMITTED BY APPELLANT, THEREBY DEPRIVING APPELLANT OF HIS RIGHT TO A JURY TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 33} In his third assignment of error, Appellant has argued that his sentence violates his constitutional rights. Specifically, Appellant has argued that the trial court erred in sentencing him to non-minimum sentences because such sentences violated his right to a trial by jury.
 {¶ 34} As previously discussed, the Ohio Supreme Court addressed Ohio sentencing guidelines in Foster. The Court also addressed the guidelines in State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855. This Court interpreted and applied Foster andMathis in State v. Dudukovich, 9th Dist. No. 05CA008729,2006-Ohio-1309. In Dudukovich, we found that while pursuant toFoster portions of Ohio's sentencing guidelines were unconstitutional, Dudukovich did not properly preserve his constitutional challenge for appeal. Dudukovich at ¶ 21. We held that an appellant, if sentenced after Blakely v.Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, waives constitutional challenge to his sentence if he does not preserve the argument in the trial court. Id. at ¶¶ 22 and 24. This Court questioned "whether [the] Defendant raised a specific challenge to the constitutionality of Ohio's sentencing statutes in the trial court." Id. at ¶ 24. We found that "[a]s Defendant failed to raise any objection below, let alone an objection specifically raising a constitutional challenge, he is precluded from raising such an argument for the first time on appeal." Id.
 {¶ 35} Based on our holding in Dudukovich, we find that Appellant did not properly preserve his constitutional challenge for appeal. See State v. Duffield, 9th Dist. No. 22634,2006-Ohio-1823, at ¶¶ 72-75 (holding that when appellant did not specifically object to the constitutionality of a statute after sentencing in trial court he waived that argument on appeal.). The record in the instant matter shows that Appellant was sentenced on August 25, 2005, well after Blakely was decided.[1] While Appellant did present arguments against incarceration, he did not object in the trial court to his sentence after it was given. Based on precedent that one must object to preserve errors for review, we find that Appellant is precluded from arguing the sentencing statute's constitutionality on appeal. See Duffield, supra. Accordingly, Appellant's third assignment of error lacks merit
 III {¶ 36} Appellant's three assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Boyle, J. concurs.
Carr, J. Concurs in Judgment Only.
[1] Blakely was released on June 24, 2004.